# Commonwealth *v.* Beauman and Perlman, Appellants.

*Criminal law—Conspiracy to defraud—Evidence—Sufficiency.*

On the trial of an indictment for conspiracy to defraud, evidence that the defendants coöperated in an elaborate scheme to gain the confidence of a third person, and to lure him to their hotel room, in which the police found a machine especially adapted to simulate the manufacture of paper money, with a quantity of new money and blank paper, is sufficient to support a conviction on an indictment charging conspiracy to defraud.

*Criminal law—Evidence—Baggage found in defendant's room—Money-making machine—Expert testimony.*

It is not error in the trial upon an indictment charging conspiracy to defraud to admit as evidence traveling bags found in the hotel rooms occupied by the defendants, where one contained a machine purporting to be used to make counterfeit money.

A machine or device, of which the jury could have no knowledge, by a mere inspection, may properly be explained by a detective having knowledge of such machines where the dress suit case, containing the machine, is found in the possession of defendants charged with conspiracy to defraud.

*Criminal law—Charge of the court—Comment upon evidence—Undue emphasis—Length of comment.*

There is no rule which requires the court to measure its words so as to give the same length to the remarks applying to one side as to the other. An assignment of error, based upon the difference in the length of comment upon the evidence of the Commonwealth, and that of the defendants, is without merit where both sides were presented, and the defendants were given every chance that they were entitled to under the law.

336, (1922).] Statement of Facts—Opinion of the Court.

Argued December 7, 1921. Appeals, Nos. 190 and 191, Oct. T., 1921, by defendants, from judgment and sentence of O. & T., Chester Co., April Sessions, 1921, No. 28, on verdict of guilty, in the case of Commonwealth of Pennsylvania v. Frank Beauman and Anton Perlman. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Indictment for conspiracy to defraud and attempt to obtain money under false pretences. Before BUTLER, P. J.

The facts are stated in the opinion of the Superior Court.

The court directed a verdict of not guilty on the charge of attempt to obtain money under false pretences, and submitted to the jury the evidence as to conspiracy to defraud. Verdict of guilty, upon which judgment of sentence was passed. Defendants appealed.

*Errors assigned* were various rulings on evidence, the charge of the court and refusal of defendants' points.

*William A. Gray,* for appellants.

*W. Butler Windle,* District Attorney, and with him *Harold R. McCowan,* Assistant District Attorney, for appellee.

OPINION BY TREXLER, J., March 3, 1922:

The most important question submitted to us is whether there was sufficient evidence to warrant a conviction. The facts as narrated by the Commonwealth's witnesses are as follows: George Kohlcheck, a Hungarian, has a store in Coatesville. One of the defendants, Beauman, came to his place of business and told that his name was Vardy and wanted to know if there was any Hungarian who came from the same town in Europe as he, Kohlcheck, did. The next morning Beau-

man came again and told a story about a man who had stolen a large sum of money from a man named Rozsnya in Pittsburgh and had absconded and that Rozsnya had offered him $10,000 if he would apprehend the culprit and that if he, Kohlcheck, would help him, he would receive one-half. Kohlcheck declined the offer but Beauman continued to call on Kohlcheck and told the story about having wired and talked with his principal in Pittsburgh and that he, Rozsnya, would come to Coatesville on the next train. The stories of Beauman excited Kohlcheck's suspicion and he informed the police. The next morning Beauman appeared at Kohlcheck's door and spoke of the expected arrival of his principal. That same day, he again saw Kohlcheck and told him that Rozsnya had arrived but was very tired and wanted Kohlcheck to come to the hotel. Afterward Beauman came with the defendant, Perlman, who was also called Rozsnya, who told about the loss of $78,000 and that Beauman had informed him that Kohlcheck had found the man who had stolen it, that he had $10,000 he had promised Beauman and that he was going to pay over that money, $5,000 to Kohlcheck and $5,000 to Beauman. Kohlcheck suggested that they put the money in bank but that did not meet with Perlman's approval. Perlman assumed the rôle of a very rich man and said that he did not want to catch the thief but said that he merely wanted to confront him and give him a good talking to. At this time Beauman whispered to Kohlcheck that Perlman had brought two suit cases of money, all fresh money. The next morning, Thursday, Beauman appeared at Kohlcheck's again and asked Kohlcheck to come to Perlman's room at the hotel. It appears the defendants with Kissich occupied two rooms at the Speakman hotel. In these rooms were found two traveling bags, one black and one tan leather and one dress suit case. At the police station the two men were shown the two bags and the dress suit case. Beauman claimed the black bag and Kissich and Perlman each claimed the

tan leather bag, but all of them denied knowledge of the dress suit case. Perlman and Beauman promptly began to disclaim it, before they were asked about it. The dress suit case and the black bag came out of the same room. The dress suit case contained a machine especially adapted to simulate the manufacture of paper money. It was equipped with an electric bell, a thermometer, buzzer, electric lights and some other contrivances. It had two compartments, each of which exactly fitted the opening in the side of the machine, which was closed by a little door. The modus operandi of it is to put sheets of white paper, the size of a bank note, between such notes or bills. The package is then wrapped in cheese cloth and put in one of the compartments. The electric current is turned on, the bell is rung, the lights flash, the buzzer buzzes, the thermometer moves and one of the compartments is shoved and pulls the other one in its place and when the drawer is opened, the spectator is led to believe that he is taking a package of genuine bank notes out of the same receptacle in which he saw this roll of money and plain paper put. Through the interchanging of the compartments, the deception is completed. The "get away," as it is called, is accomplished by the operator taking a package which is supposed to contain the new bills and instructing the victim he should not open it for eighteen hours in order to have the ink set. This allows, of course, ample time for the operator to decamp. In the one bag there was a black leather wallet filled with vials and one had new money in it—seven dollars—five "ones" and a "two" and blank paper and a copy book. The contents of the bags were exhibited to the jury and the expert witness testified that the above articles found in the bag were used in connection with the apparatus in the suit case. We think the court was right in holding that all these circumstances taken together were sufficient to support a conviction. Beauman paid nine visits to Kohlcheck, apparently with no other design than to secure his

confidence and to interest him in an alleged scheme which had no foundation in fact and which appears to have been proposed in order to lead up to the final act, when the machine could be used to defraud Kohlcheck. Perlman's appearance on the scene and his visit with Beauman shows that he was party to the transaction. The testimony of the defendants instead of being such as would relieve them, operates against them, for they give contradictory stories and the explanation of their presence in Coatesville is not such as would impress any but the most gullible person. The court was right in submitting the case to the jury.

It is assigned as an error that the court allowed the bags which were found in the rooms occupied by those defendants to be shown in evidence with their contents. It appears that these three bags were in the two rooms when they were taken away by the police and that the two rooms were occupied by the defendants and used by them indiscriminately. We can see no reason why the court could have ruled these out because assuredly these men exercised dominion over the bags and the fact that the suit case was contained in the same rooms would be some evidence that it belonged to them and was in their possession.

We can see no error in the admission of the testimony of Detective Gomborrow who was a member of the police force of the City of Philadelphia. He was called upon to explain the use of the device which was found in the dress suit case. The jury by a mere inspection could not have knowledge of it. Certainly if such a device is found in the possession of a person charged with a crime, the use the device is put to, may be explained by some one having a technical knowledge of it.

As far as the objection made to the charge of the court, we can find no merit in it. The court is charged with having expatiated upon the Commonwealth's testimony at great length and made briefer reference to the defense. There is no rule which requires the court to

336, (1922).]        Opinion of the Court.

measure its words so as to give the same length to the remarks applying to the one side as to the other. The court, however, did present both sides and after reading the charge we can see nothing that would in the slightest degree indicate to the jury that the court considered the Commonwealth's testimony more reliable or entitled to more careful consideration than that of the defense. These defendants were given every chance that they were entitled to under the law and there was no error committed in the trial.

All of the assignments are overruled, the judgment is affirmed and the record remitted to the court below and it is ordered that the defendants appear in the court below at such time as they may there be called and that they be by that court committed until they have complied with the sentence or any part of it which had not been performed when the appeal in this case was made a supersedeas.